Leonard Jarvis et al., Appellants, *v.* John Frink, Appellee.

APPEAL FROM PEORIA.

Whether a merger is created by the union of legal and equitable estates, as of a mortgage with the fee, depends upon the intention of the mortgagee.

This cause was heard before Peters, Judge, at May term, 1853, of the Peoria Circuit Court. The facts of the case are set out in the opinion of the court.

C. Ballance, for appellants.

J. Manning, for appellee.

Treat, C. J. The case presents this state of facts. In September, 1837, Dickinson made a promissory note to Frink, for the sum of $1,340.20, payable in two years, with interest at the rate of ten per cent. per annum for the first year, and twelve per cent. for the second; and, together with his wife, he executed a mortgage on certain real estate in Peoria to secure the payment of the note. In October, 1839, Dickinson and wife, by deed of general warranty, for the expressed consideration of $1,500, conveyed the mortgaged premises and other real estate to Frink in fee. On the same day, Frink executed an agreement, which recited the making of the conveyance, and then proceeded: " In consideration thereof, it is hereby mutually agreed by and between the parties, that if said Dickinson shall at any time during three years from this day, make any agreement with any person or persons, for the selling and disposal of any part of the above described property, and said Frink shall not make or execute a deed therefor, he will allow to said Dickinson the same amount which would or might have been received therefor, upon the following conditions, to wit; that if the said property has all been sold on or before the expiration of three years, and said Frink has received the just and full sum of $1,668.87, with interest thereon at the rate of nine per cent. per annum, then any amount over and above said sum shall be given to said Dickinson, if the same has been realized, or allowed to said Dickinson, if the same might have been realized, and he, the said Dickinson, was prevented from so doing by said Frink not selling or disposing of said property; and it is also agreed by and between the parties, that nothing herein contained shall prevent said Frink from selling and disposing of said property to any person or persons he may think proper,

and allowing said Dickinson any overplus of the amount received in manner before specified; and it is hereby mutually agreed in addition, that if said Frink wishes to sell said lands before the expiration of three years, that he will have the same appraised by the president and two of the trustees of the town of Peoria, and allow to said Dickinson on the amount before specified whatever they shall deem said property to be worth at a fair cash value; and that the property in the town of Peoria, all or any part thereof, may be leased by the said Dickinson, and any amounts which may or can be realized in that way, shall go to the extinguishment of said amount before specified."

In August, 1839, Jarvis and Thompson recovered a judgment in the Peoria circuit court against Dickinson, for $130.81; and under an execution issued thereon, they purchased the mortgaged premises in February, 1841, and received a sheriff's deed for the same in October, 1842.

In July, 1844, Frink filed a bill in chancery against Dickinson, Jarvis and Thompson, and others, praying for the foreclosure of the mortgage. Jarvis and Thompson, in their answers, set up their purchase under the judgment, and claimed title to the premises by virtue thereof. At the May term, 1853, the cause was submitted to the court upon the facts before set forth; and on the deposition of Dickinson, and the oral testimony of Bestor. Dickinson stated, that he conveyed the premises to Frink in satisfaction of the debt, but it was agreed that *the mortgage should remain undischarged in consequence of existing judgments.* Bestor testified, that he was present when the deed was made by Dickinson, and the agreement was signed by Frink; the note, mortgage, and agreement were put into the hands of the witness, and he was to act as the agent of the parties, and sell the property, and collect the money; if the mortgaged premises were not sold in three years, they were to become Frink's property; the $1,668.87, mentioned in the agreement, was the amount then due on the mortgage; witness was authorized to sell the property, and the note and mortgage were left with him, so that he could make indorsements thereon, when he should receive money. The court rendered a decree foreclosing the mortgage; and Jarvis and Thompson prosecuted an appeal.

The principles applicable to this case were discussed in Campbell *v.* Carter, *ante.* The only question is one of intention. Did Frink intend to discharge his mortgage? If so, the judgment of Jarvis and Thompson became the superior lien, and they are entitled to hold the property under their purchase. If not, the mortgage is a subsisting incumbrance, and may be

HARVARD LAW SCHOOL LIBRARY

enforced against them. There is not the least difficulty in the case. It was not the intention of Frink to discharge the mortgage. On the contrary, he clearly intended to keep it alive to protect himself against other incumbrances. The proof of that intention is full and explicit. The note and mortgage were not cancelled ; they were not even given up to Dickinson. The latter swears positively, that the mortgage was to remain undischarged in consequence of existing judgments against him. By the mutual consent of the parties, Bestor was authorized to sell the property, and apply the proceeds to the payment of the mortgage debt ; and the note and mortgage were put into his hands, to enable him to make the proper indorsements. The written agreement also shows that the mortgage was not extinguished. According to its terms, Dickinson had the right to sell the property at any time within three years, and Frink was bound to convey to the purchaser, and apply the purchase-money to the payment of the debt, or take the property at the same price, and credit Dickinson with the amount. Frink could not sell the property within that time, without crediting Dickinson with its appraised value. In the case of a sale, Frink was to retain the amount of his debt, and pay over the balance to Dickinson. The whole arrangement was but an extension of the time of payment, upon additional security. The debt was not paid or discharged. It was still in the power of Dickinson to pay off the debt, and entitle himself to a reconveyance of the property. The title was transferred to Frink, that he might sell and convey the property, and reimburse himself out of the proceeds, without a foreclosure of the mortgage, and a forced sale of the property. Jarvis and Thompson acquired the property subject to the lien of Frink's mortgage ; and they must discharge that lien, or lose the benefit of their purchase.

The decree is affirmed.

*Decree affirmed.*